The merits of Mr. Mancebo's ineffective assistance of counsel claim are squarely governed by the clearly established test of Strickland v. Washington. While the California Court of Appeals correctly identified Strickland's governing legal principles Counsel, it's not how fast you speak, it's how clearly you speak, and I'm having trouble with this phone. Could you just explain to us what the issue is? Certainly, Your Honor. The California Court of Appeals unreasonably applied the principles of Strickland v. Washington to mark Mancebo's case in two separate holdings. First, in its finding that defense counsel's failure to object to the polygraph refusal did not constitute deficient performance. And second, in its finding that the resulting erroneous admission of Mr. Mancebo's refusal to submit to a polygraph examination did not prejudice his trial. Could you focus on that second one, please? Certainly. With regard to the question of prejudice, the State and the defense had two different competing theories of the evidence at trial. The State, relying primarily on the testimony of the three individuals in the other car, Ray Hernandez, Robert Bowser, and David Sandoval. Their theory was clearly that Mark Mancebo was guilty of first-degree murder in being the agent and probably principal in the murder of Mr. Ruiz. The defense theory was that Mr. Mancebo at best was merely present at the crime and at worst had some kind of minor accessory role in the crime. Well, that wasn't his first position. The first position was that he was at the A.M.P.M. store, he wasn't even around, and the video show, the videos would show that he was there. That didn't fly. That is if what is contained in his interview with the police. I agree. But I think it's clear the defense theory at trial was present, possibly involved in some accessory after-the-fact way, but certainly not an agent or principal in the murder. So he abandoned his alibi theory for trial? Yes. And when the jury came back with its partial verdict on the fifth day, their verdict was actually consistent with the defense theory. They had acquitted him of first-degree murder, found him guilty of accessory, deadlocked on the second-degree murder, and kidnapped charges. Had they acquitted of everything else and convicted him only of the accessory, I think that would have been entirely consistent with Mr. Mancebo's defense. The acquittal of first-degree murder clearly rejects the only theory the state was advancing. Their three key witnesses said, we were standing by a car, didn't know anyone was going to get shot. Mark Mancebo, Guy Perez committed the murder. So tell us why that equated to prejudice. Okay. I think there are two independent reasons why the California Court of Appeals erroneously applied the principles of Strickland to the case. First, the California Court of Appeals completely failed to follow Strickland's command that you must determine prejudice after considering the totality of the evidence that was before the jury, including the way the error would have affected the inferences to be drawn from the evidence and the strength of the evidence in the entire record. How? Well, I think you have to consider first the quality of the state's evidence. Their three key witnesses, all of whom are members of a violent gang, get immunity, time served, and immunity respectfully from prosecution. The jury knew that. Oh, I agree the jury knew that. But they were looking at three states' witnesses with obviously a very good reason to lie versus a defense theory that is advanced really only through this police interview. Because it's important to remember, Mr. Mancebo never takes the stand. So the only thing the jury hears from him is through the tape recording of States Exhibit 136. That interview is played for them as basically the final thing in the State's rebuttal closing, after which the prosecutor refers to him as lying a liar or having lied dozens of times in the last three paragraphs of transcript closing argument. Didn't refer to the polygraph, though. No, he does not explicitly refer to the polygraph. But I think clearly, implicitly, since he doesn't take the stand, liar can only be a reference to his interrogation. That tape was played three times eventually to the jury, and the transcript went back with them during their deliberations. There's nothing else it could have referred to, particularly when the jury instructions given talk to them about consciousness of guilt, assessing... Do the crime, and he says, I didn't do it? Yes, but he didn't take the... And they didn't find him guilty of first degree, so they didn't find that he deliberated in committing this crime, simply that it was a voluntary, intentional murder with malice, a forethought, but not deliberation. Correct? That is correct, but that isn't consistent with either side's theory of the evidence at all. It's clear that the State's theory is a first degree murder theory. It's clear that the defense theory is somewhere between accessory and mere presence, depending on how you draw the inference. So why does that prove prejudice? Juries have compromised verdicts all the time. We don't know why the jury found what it found, but how does that establish prejudice? The prejudice from their finding out about the refusal to take the polygraph examination is, I think, explosive. There is a reason why the California legislature in 351.1 categorically excludes this evidence. This isn't a discretionary test. There's no balancing. As soon as a jury hears, in the middle of this interview tape, that he refused to submit to a polygraph examination, which the police refer to clearly in the tape as a lie detector, so the jury knows what we're talking about, that's absolutely explosive. Mr. Mancebo doesn't take the stand. When the State refers to him as a liar, it has to be a reference to what they heard from him on that interview tape. And I think if it is prejudice, isn't that de minimis? And that whole interview tape was a 20 minutes and a few seconds mention of the polygraph here. We have no clearly established law that I could find. There are no Supreme Court opinions about whether or not this is permissible. And if we look to all the evidence in the case, let's say it might have been a little bit of prejudice, but it's de minimis in light of all the other evidence, isn't it? Well, with all due respect, Your Honor, I disagree. First of all, while the clearly established law that the California Court of Appeals misapplied was strickland, California is very clear that this is inadmissible. What's the prejudice analysis in strickland that you are saying controls here? I mean, what are you saying in strickland that compels a finding of prejudice? Well, it's that they failed appropriately to apply. They failed reasonably to apply strickland. First, by failing to consider the totality of the evidence. Things like the length of the deliberations, the quality of the State's case. Were not even considered as part of the reasoning of the California Court of Appeals opinion on prejudice. Second, the California Court of Appeals made factual findings that were unsupported either by the record or by logic. The court holds that no reasonable juror would infer consciousness of guilt, and that the erroneous admission wasn't exploited by the State. While it may not have been intentionally or explicitly exploited by the State, it was clearly exploited in that rebuttal closing argument before it went to the jury. I don't think there's any way to understand liar other than in reference to the interview tape when Mr. Mancebo doesn't take the stand. Well, as Ms. Baird pointed out, there is an alternative way of interpreting that in view of the testimony that was elicited at trial. Right, but Mr. Mancebo didn't testify at trial, so the only way... The other witnesses could support a theory that he was lying if his version as set forth in the interview is different than the version that was given by the witnesses at trial. But I actually think that's part of what the prejudice of the admission of this reference to the polygraph is, because not only is there a chance that it infers consciousness of guilt, but if you look at the actual Transcript of States Exhibit 136 in the record excerpt, the police imply, they say, we have an in-house polygraph person. The implication being they give this polygraph to everyone they interview. I think the clear inference being that the State's witnesses took it and passed it. I don't take polygraph, I'm paraphrasing, because I don't trust them. There could be a reaction to something other, and I don't trust them, so I'm not going to take it. There was nothing indicated that he wasn't taking it because he felt guilty. But I think that's the clear inference. With all due respect, you're talking about what is clearly the self-serving statement of a defendant being interrogated by the police. I don't take lie detectors because I don't think they're reliable. The jury doesn't have to believe that's his reason. They can infer consciousness of guilt. Also, his clear understanding... The record doesn't reflect that there was an inference of consciousness of guilt. That's the problem with your prejudice argument. Well, we never know what makes up a jury deliberation because they're secret, but we know that California Evidence Code makes this categorically excludable and that the California Supreme Court has made clear that the reason it's categorically excludable is because in the words of the Hogan Court, the quote, of a jury ever hearing the words lie detector test. And one of the problems with his explanation is it implies, among other things, a lot of experience with the criminal justice system. The police... Watching a lot of TV. Well, that's true, but the police say lie detector. The police say lie detector, and his response is the polygraph examination is not reliable. I think there's just an extreme danger, the jury understood that, to mean this is a person who's taken a poly before and had it come back to bite him. He understands that he doesn't want to take the poly, and if you look at it in context, the implication is that the State's other witnesses did take the polygraph and pass. And in a 13-day deliberation with a compromised verdict, I think the California Court of Appeals was unreasonable in finding that there was no, could not have been prejudice. Thank you, counsel. You've exceeded your time, but we will give you one minute for rebuttal. Thank you. May it please the Court. Brian Albers on behalf of the State and the Warden, California Attorney General's Office. Really, this is a narrow issue with the twist in this matter. When I read this, I first thought about the Monday morning quarterback scenario. My father played football for Oregon State, and he was a wonderful player, coach afterwards. He coached high school football, and he was just a Monday morning quarterback to the end. Big football fan, NFL fan. And you can never get in the head of the quarterback, and that's what we're doing here in this case, is trying to figure out what it is the attorney did from the blank record, really. And the record in this case clearly shows that it was a fact-finding process, really, is what it was. And certainly we know now afterwards, after the evidence you're hearing, that Mr. McKechnie was, should have made an objection. He did say that, but we didn't know that, and neither did the Fifth D.C.A. know that when, at the time. So now that we know that, isn't that ineffective? Don't we know that that's ineffective now that we know he recognizes he should have made an objection, and he didn't? We know that after the fact, but we look at what the Fifth District Court of Appeal did and wondering whether or not they applied Strickland to the record then before it. And my position is that they did reasonably apply Strickland. They applied their strong presumption based upon what the record showed right then before them, the trial record. What possible tactical strategy could encompass failure to object to mention of a polygraph? Well, I used to be a trial lawyer in my formal life, and whenever you have gaps in the proceedings, let's say you redact certain portions of the tape, juries surmise as to what that could be. And in some cases, that could be to the detriment of the defendant in this case. I've had that scenario happen. It came at the very end of the tape. There wouldn't have been a gap. It just came at the very end. Just all you have to do is chop off the last few seconds. There were some statements after that. There would have been a gap in the record, albeit very brief. That's true. There was some reason. You could just lop off everything before the polygraph entry, and the jury would never know. That could have happened, absolutely. Aren't we bound by what the counsel said, that he actually went over this twice and missed it? Everyone did. Absolutely, everyone did. So there's obviously no tactical reason for not objecting. We know that now, but the Fifth DCA, with the law that it had at the time applying Strickland, didn't and couldn't divine that from the record. And that's the position that we're taking, is that they don't, based upon what they saw in the record, they had to assume that there was a tactical reason for it. And they did do that. And there's California Supreme Court authority for that proposition, and there's the United States Supreme Court authority also in Yarborough v. Gentry. And that's at 540 U.S. 1 and Massaro v. United States. Counsel, assume we disagree with you. Would you address the prejudice prong? Yes, ma'am. This really is a case where you can get into the heads of the jurors, and that really doesn't happen very often. And I say that because there's declarations in the new trial motion, no reference being made anywhere as to polygraph being considered whatsoever. Who took the declarations? Excuse me. Who took the declarations? Both sides took declarations, Your Honor, both the prosecution and the defense. Are you saying there's no mention of the polygraph in the declarations taken by the defense? That's correct, Your Honor, as well as the prosecution. So this is one of those very rare instances where we can actually get into the head of a juror and determine that it just went by them also like it did everyone else in this case. Secondly, at least three people saw Mr. Mancebo with the gun a week before the murder. The trial evidence was that one of the witnesses saw Mr. Mancebo with the gun and said, hey, I can cap somebody with this. Mr. Mancebo certainly had the motive to do this. This was a gang case, and this victim was a rival gang member and a rival to Yvonne Paz's affections. Mr. Mancebo, the state's theory was that Mr. Mancebo was pining for Yvonne Paz's affections, and on that night she rebuked him and said, no, you're more like a brother to me. I don't want to be your girlfriend. That same evening, she had sex with the victim. Mr. Mancebo was outside listening to the door at that party, as well as Mr. Perez in the case. So the motive there is rival gang membership, and it's also because of Yvonne Paz in this case. Yvonne Paz also later saw Mr. Mancebo burning his jacket as evidence in the case, and when she confronted him about the murder of Mr. Rios, Mr. Mancebo said, I would kill for a baby, but I would not kill for a woman. And I think that's telling, because Mr. Mancebo never says, I didn't kill, even when Ms. Paz says, hey, you know, where's Mr. Rios at? Did you guys kill him? Certainly there was more than one person involved in this murder. There were at least five. Mr. Perez was a co-defendant, or he was a co-suspect and charged in another crime. As any gang case is, really, it comes down to credibility, and the jury certainly had issues. It was a compromise in that they convicted Mr. Mancebo of second-degree murder, and I think the court honed in on that fact. They had, it was, this was a capital case. It started off as a capital case. And it was prosecuted on both a felony murder theory as well as a premeditated theory also in this matter. Really wasn't prejudice of any was de minimis in this case at all. And frankly, even if the court were to say, hey, counsel was unreasonable and failing to object, there just really wasn't any prejudice, and we would ask the court to affirm the judgment of the lower court below. Thank you. Thank you, counsel. One minute for rebuttal. Briefly with regard to the juror declarations, because they are important, they were taken by trial counsel, so they were never asked any question about the polygraph. What the declarations do reflect is that on that fifth day when they deadlocked, they were voting 6-6 on the murder two count. And I think one of the things that the California Court of Appeals was erroneous in applying Strickland with regard to prejudice is not even taking factors like that into consideration. Strickland makes clear you have to look at the totality of the evidence. The declarations were not taken by trial counsel, but they were taken by investigators acting for counsel. Well, I agree, but they were taken by the defense team that never noticed the polygraph issue at all. They were not something that were taken later on as part of the ineffective assistance of counsel investigation. So since trial counsel admitted at the evidentiary hearing that he never noticed the polygraph refusal, they just weren't part of that investigation. Counsel, if that was something that was paramount in the mind of the jurist, wouldn't that have come out regardless of whether it was the focus of the investigator's inquiry? But I think the dangerous thing about something like the refusal to take the polygraph is it's not something that comes across consciously. It's something that affects their perception of the trial in a very subtle and implicit  way. There is a reason why the California legislature absolutely does not permit this evidence. It has the air of science and in subtle ways it suggests that the police can scientifically determine who's truthful and who isn't truthful. And in a trial where they tried two people and gave walks to the other three as their star witnesses, that subtle suggestion that they knew who was telling the truth and who was not in a trial where the jury deliberated 13 days before rendering a compromise verdict is explosive. Is there any evidence that the other witnesses took the polygraph test? I think if you look at the text of State's Exhibit 136, it is subtly in that polygraph reference. Because what the police see... Is there any evidence at all that Mr. Perez or the other persons took the polygraph test? No, but I think it's implicit in some of what's in the interview statement. And the problem is, of course, it goes in with no objection or limiting instruction at all. And what the police say to Mr. Mancebo in that interview is, we have someone full  We have all the architectures we can get right here at the station. I think the implication being, every witness gets a poly, and Mr. Mancebo's on trial. We understand your argument. Because he didn't refuse it. Thank you. You've exceeded your time. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: D.W. Nelson, Rawlinson, Bea